UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03589-JRS-MJD |
| | ) | |
| ANTHEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**Entry and Order Setting Aside Magistrate Judge's Order (ECF No. 48), Compelling Arbitration, and Staying This Case**

This case arises from an insurance coverage dispute between Defendant Anthem, Inc. and two of its insurers, Plaintiffs Atlantic Specialty Insurance Company ("Atlantic") and Bedivere Insurance Company f/d/b/a OneBeacon Insurance Company ("OneBeacon"). Anthem initiated arbitration on August 7, 2019, and Plaintiffs thereafter brought this action seeking declaratory judgment that Anthem is not entitled to coverage and that Plaintiffs are not required to arbitrate their dispute with Anthem.

Plaintiffs moved to stay arbitration, (ECF No. 24), and Anthem moved to stay this case and compel arbitration, (ECF No. 42). The magistrate judge denied Anthem's motion to stay and compel and granted in part Plaintiffs' motion to stay arbitration. (ECF No. 48.) Anthem now objects to the magistrate judge's order. (ECF No. 51.) Because the magistrate judge's order is contrary to law, that order (ECF No. 48) is

1

**set aside**, Anthem's motion to stay and compel arbitration (ECF No. 42) is **granted**, and Plaintiffs' motion to stay arbitration (ECF No. 24) is **denied**.

## I. Background

*A. The Policies & Alternative Dispute Resolution Provisions*

The policies at issue here are both part of a tower of $175 million in professional liability insurance.  The base of the tower is a policy issued by ACE American Insurance Company.  The Atlantic policy sits directly above the ACE policy, and the OneBeacon policy sits atop the tower.  The ACE policy at the base of the tower contains the following Alternative Dispute Resolution provision ("ACE ADR provision"):

T.  Alternative Dispute Resolution

1.  In the event that any disputes or differences arise under or in connection with this Policy or the breach, termination or invalidity thereof, whether arising before or after termination of this Policy, the **Insured** and **Insurer** shall make a good faith attempt to resolve the disputes or differences through informal negotiations.

2.  If such disputes or differences remain unresolved, the **Insured** and **Insurer** shall submit such disputes or differences to an alternative dispute resolution ("ADR") process as described in paragraph 3 below.  Either the **Insured** or the **Insurer** may select the type of ADR process; provided, however, the **Insured** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, in which case the **Insured's** choice of ADR process shall control.  Commencement of the ADR process shall occur when the parties formally retain a mediator or arbitrator to preside over the ADR proceeding.

3.  The **Insured** and **Insurer** agree that there shall be two choices of ADR process:

   a.  Non-binding mediation administered by JAMS. The **Insured** and **Insurer** shall cooperate with one another in selecting a

2

mediator from the JAMS panel of neutrals and in scheduling the mediation proceedings. The parties agree that they will participate in the mediation in good faith and share equally in its costs. The mediation will take place in New York, New York. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided however, no such judicial proceeding shall be commenced until the mediation has been concluded or terminated and at least ninety (90) days shall have elapsed from the date of the conclusion or termination of the mediation.

b. Binding arbitration through JAMS before three arbitrators, with each arbitrator having background and experience relevant to the dispute. Each party shall select one arbitrator, and the two arbitrators shall select the third arbitrator. The arbitration shall be conducted pursuant to the then-current JAMS Comprehensive Arbitration Rules & Procedures. The decision of the arbitrator shall be final, binding and provided to both parties; provided, however, the arbitrator's decision shall be subject to appeal pursuant to Rule 34, Optional Arbitration Procedure, of the JAMS Comprehensive Arbitration Rules & Procedures.

   i. Unless the parties otherwise agree, the arbitration shall take place in Indianapolis, Indiana, Chicago, Illinois or New York, New York, to be determined by the mutual agreement of the parties. If the parties cannot agree, then the arbitrators shall choose from one of these three venues.

   ii. Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the cost of the third arbitrator. The panel will allocate any remaining common expenses of the arbitration.

   iii. If an arbitration proceeding has not been commenced within ninety (90) days of the appointment of the arbitrator, the arbitrator may order the commencement of such proceeding at anytime thereafter. It is the intention of the parties that discovery, argument and other process in the arbitration shall be limited to that which, in the discretion of the arbitrator, is necessary to fairly resolve the dispute.

(Compl. ¶ 47, ECF No. 1 at 19–20.)

The Atlantic policy provides that it "will apply in conformance with, and will follow the form of, the terms, conditions, agreements, exclusions, definitions and endorsements of the **Underlying Insurance,** except [four enumerated exceptions]." (ECF No. 25-1.)  *See Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589 (7th Cir. 2001) ("[T]he 'Exclusions' section provides that the slip policy follows the underlying contract 'in every respect' except the one mentioned specifically.  This is essential to any follow-form policy.").   The Atlantic policy defines "Underlying Insurance" as the ACE policy and a Willis policy (which appears to be referred to elsewhere as "Lloyd's Syndicate AGM 2488" policy number B0080119735P12). Notwithstanding the inclusion of the Willis policy in the definition of "Underlying Insurance," Atlantic concedes that the Atlantic policy follows form to the ACE policy and includes the ACE ADR provision. (Compl. ¶¶ 53, 110–12.)  *See Sphere Drake Ins. Ltd.*, 256 F.3d at 589 ("[A] follow-form reinsurance agreement logically includes an arbitration agreement in the underlying contract.  This understanding could be overridden, but this slip policy's 'Exclusions' section does not displace the arbitration clause.").

The OneBeacon policy, like the Atlantic policy, provides that it "will apply in conformance with, and will follow the form of, the terms, conditions, agreements, exclusions, definitions and endorsements of the **Underlying Insurance,** except [four enumerated exceptions]."   (ECF No. 1-2 at 8.)   The OneBeacon policy defines "Underlying Insurance" as the following policies:

| Carrier | Policy Number | Policy Type |
|---|---|---|
| ACE American Insurance Company | MSP G21816097 | Managed Care Organization Errors & Omissions Liability |
| Lloyd's Syndicate AGM 2488 | B0080119735P12 | Managed Care Organization Errors & Omissions Liability Excess |
| BCS Insurance Company | XS-MCE 121-040 | Managed Care Organization Errors & Omissions Liability Excess |
| XL Insurance (Bermuda) Ltd. | BM00026068EO12A | Managed Care Organization Errors & Omissions Liability Excess |
| Chartis Excess Limited | 28330206 | Managed Care Organization Errors & Omissions Liability Excess |
| Endurance Specialty Insurance, Ltd. | P011413002 | Managed Care Organization Errors & Omissions Liability Excess |
| Iron-Starr Excess Agency Ltd. | ISF0000810 | Managed Care Organization Errors & Omissions Liability Excess |
| Argo Re Ltd. | ARGO-EANDO-12-000218.3 | Managed Care Organization Errors & Omissions Liability Excess |
| Ironshore Specialty Insurance Company | 000926402 | Managed Care Organization Errors & Omissions Liability Excess |
| BCS Insurance Company | XS MCS 121-040B | Managed Care Organization Errors & Omissions Liability Excess |

Each policy other than the ACE policy is a follow-form excess policy. Four of the excess policies—the Ironshore Specialty policy, the Lloyd's policy, and the two BCS policies—expressly follow form to the ACE policy and contain no provision contrary to the ACE ADR provision. (The Lloyd's policy expressly follows the ACE policy's ADR provision, (ECF No. 42-3 at 96), while the others follow form to the ACE policy generally without any specific mention of ADR.) The remaining five policies—the XL

policy, the Chartis policy, the Endurance policy, the Iron-Starr policy, and the Argo Re policy—also follow form to the ACE policy but contain ADR provisions requiring arbitration under JAMS International Arbitration Rules in effect on August 1, 2011, by three disinterested, neutral arbitrators in Toronto, London, or Bermuda ("JAMS International provision").  (*See* ECF No. 42-3 at 134, 144, 180, 190, 206.)  Like the ACE ADR provision, the JAMS International provision calls for each party to select one arbitrator, and for those arbitrators to select the third arbitrator.  (*Id.*)

Accordingly, the OneBeacon policy's followed policies all either (1) contain the ACE ADR provision (the ACE policy), (2) follow form to the ACE ADR provision (the Ironshore Specialty policy, the Lloyd's policy, and the two BCS policies), or (3) contain the JAMS International provision (the XL policy, the Chartis policy, the Endurance policy, the Iron-Starr policy, and the Argo Re policy).

B.  *The Underlying Litigation and Mediation*

Anthem was named as a defendant in multiple antitrust class action lawsuits, which were consolidated into a multi-district litigation action (the "MDL") in federal court.  Anthem sought coverage for the claims from its insurers, and Atlantic and OneBeacon denied coverage.  Anthem invited its insurers to participate in mediation in Bermuda with Layn Phillips, a retired federal judge who had also conducted mediation among the parties in the MDL.  Mediation began and ended—without resolution—on April 19, 2019.  On August 7, 2019, Anthem initiated arbitration proceedings.  Atlantic and OneBeacon thereafter brought this action, seeking a declaratory judgment that Anthem is not entitled to coverage and that Anthem is not

entitled to arbitrate the coverage dispute because the Bermuda mediation satisfied the ADR provision.

## II.  Standard of Review

Rule 72 sets forth two different standards for resolving objections to a magistrate judge's order:  one for nondispositive matters, Rule 72(a), and one for dispositive motions, Rule 72(b).  Under Rule 72(a), magistrate judges' orders on nondispositive matters are to be set aside if clearly erroneous or contrary to law.  Under Rule 72(b), magistrate judges' recommended dispositions are to be reviewed *de novo*.  It is unclear whether magistrate judges' orders on motions to stay and to compel arbitration fall within the purview of Rule 72(a) or Rule 72(b).  On the one hand, they are not among the pretrial matters excluded from referral to a magistrate judge by the Magistrates Act.  *See* 28 U.S.C. § 636(b)(1)(A) (providing that a judge may refer any pretrial matter "except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.").  But on the other hand, they bear some indicia of dispositive motions—most notably, an order denying a stay or a motion to compel arbitration may be appealed under 9 U.S.C. § 16.  Here, however, the Court need not decide the relevant standard because the magistrate judge's order rests on clearly erroneous findings and on legal error, and must therefore be set aside under either standard.

### III. Discussion

Arbitration should be compelled where "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheuer v. Fromm Family Foods LLC*, 863 F.3d 748 F.3d 748, 752 (7th Cir. 2017) (citations omitted). "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). Anthem contends—and Plaintiffs do not dispute—that Indiana law applies to the policies. Under Indiana law, "[w]hether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent." *MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004).

The Federal Arbitration Act reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted). Likewise, "Indiana policy favors arbitration." *MPACT*, 802 N.E.2d at 905. However, both policies favoring arbitration apply "when determining the *scope* of an agreement to arbitrate, not when deciding whether there is an agreement to arbitrate in the first instance." *Druco*, 765 F.3d at 781; *see also MPACT*, 802 N.E.2d at 907

8

("[o]nly after it has been determined that the parties agreed to arbitrate their disputes does the policy favoring arbitration play an important role").

"A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate.  But if the district court determines that the making of the arbitration agreement is seriously disputed, the court shall proceed summarily to the trial thereof."  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (quotation marks and citations omitted).  "The party opposing arbitration must identify a triable issue of fact in order to obtain a trial on the merits of the contract." *Id.*

### A. Atlantic

At issue with respect to Atlantic is who (the courts or the arbitrator) should decide whether the coverage dispute is arbitrable—a "rather arcane" question.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  Anthem contends that the arbitrator, not the court, should decide whether the parties' dispute is arbitrable. (ECF No. 51 at 3.)  Plaintiffs disagree, contending that the arbitration portion of the ACE ADR provision is applicable only if Anthem elected arbitration under the ACE ADR provision.  (ECF No. 60 at 15.)  The magistrate judge's order held that the court must first determine whether the Bermuda mediation satisfied the ACE ADR provision before it can determine whether Anthem is entitled to arbitrate the coverage dispute.  (*See* ECF No. 48 at 8, 13.)

Whether a valid arbitration agreement between Atlantic and Anthem exists "is a question reserved for the judiciary."  *Wis. Local Gov't Prop. Ins. Fund v. Lexington*

*Ins. Co.*, 840 F.3d 411, 414 (7th Cir. 2016).  But that question must be distinguished from a related question:  whether Anthem has a right to arbitration under a valid agreement.  Unlike the question of whether an agreement to arbitrate *exists*, the question of whether Anthem has a *right* to arbitration under such an agreement may be delegated to the arbitrator to decide and, indeed, may be presumptively for the arbitrator to decide if it is a question of procedural arbitrability.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.  But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.");  *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 34–35 (2014) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.  These procedural matters include claims of waiver, delay, or a like defense to arbitrability.  And they include the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.") (quotation marks and citations omitted).

The arbitrability dispute between the parties here is whether the Bermuda mediation satisfied the ACE ADR provision such that Anthem is not entitled to arbitration.  It is, in other words, a matter of whether certain conditions precedent to arbitration have been fulfilled (or can no longer be fulfilled).  Under Indiana law, "a condition precedent is a condition that must be performed before the agreement of

the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises." *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind. 1998); *see also John M. Floyd & Assocs. Inc. v. Star Fin. Bank*, 489 F.3d 852, 855 (7th Cir. 2007) ("We recognize, however, that the term 'condition precedent' carries multiple meanings and can refer to a condition precedent to the formation of a contract, or a condition precedent to an obligation that arises under an already existing contract."). The distinction between the two types of conditions precedent is especially important in the context of arbitration agreements, where the existence of the agreement is a matter for the courts but arbitrability may be arbitrated.

First, whether conditions precedent in an arbitration agreement have been met may be exclusively for the judiciary where they are conditions to the formation of the agreement to arbitrate. In *Wisconsin Local Government Property Insurance Fund v. Lexington Insurance Company*, 840 F.3d 411, 416 (7th Cir. 2016), for example, a joint loss agreement provided, "The payments by the insurers hereunder and acceptance of the same by the insured *signify the agreement* of the insurers to submit to and proceed with arbitration within 90 days of such payments[.]" (emphasis added). The Seventh Circuit held that the provision "is not an agreement to arbitrate at all. Instead, the Fund Policy JLA merely codifies a procedure whereby the parties *can potentially* agree to arbitrate. . . . To be clear, the Fund Policy JLA's payment-and-acceptance mechanism is not merely a procedural mechanism attendant to an

already-enforceable arbitration agreement.  Instead, this procedure is the means by which the parties form an agreement to arbitrate." *Id.* at 417.

But where conditions precedent are conditions to the right or obligation to arbitrate under an already-existing arbitration agreement, whether those conditions have been satisfied is typically a question for the arbitrator.  In *BG Group*, a treaty provided that a dispute "shall be submitted to international arbitration if one of the Parties so requests, as long as a period of eighteen months has elapsed since the dispute was submitted to a local tribunal and the tribunal has not given its final decision."  572 U.S. at 35.  The Supreme Court held that the provision "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *Id.* at 35–36.  "The litigation provision is consequently a purely procedural requirement—a claims-processing rule that governs when the arbitration may begin, but not whether it may occur or what its substantive outcome will be on the issues in dispute." *Id.* at 36.  The Supreme Court held that interpretation and application of the provision was primarily for the arbitrators, not the judiciary. *Id.* at 41.

Further highlighting the importance of the distinction between conditions to the right to arbitrate under an already-existing agreement and conditions to the formation of an arbitration agreement, Chief Justice Roberts, in dissent, construed the litigation provision as a unilateral offer to arbitrate (because the treaty petitioner–investor was not a party to the treaty between Argentina and the United Kingdom), so that no agreement to arbitrate was formed unless the litigation

requirement was met.  *Id.* at 50 ("Submitting the dispute to the courts is thus a condition to the formation of an agreement, not simply a matter of performing an existing agreement.").  Having framed the provision as a condition to the formation of an agreement to arbitrate, rather than as a condition to the right or obligation to arbitrate, Chief Justice Roberts would have held that the question was for the courts. *Id.* at 60.

Courts typically find conditions precedent to contract formation only where the contract expressly provides that the parties' agreement or an element of contract formation (*i.e.*, offer, acceptance) depends on the satisfaction of the condition.  *See Sasso v. Warsaw Orthopedic, Inc.*, 45 N.E.3d 835, 840 (Ind. Ct. App. 2015) (conditions precedent "are generally disfavored and must be stated explicitly within the contract").  In *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 381 (7th Cir. 2001), for example, a purchase agreement provided that "*this offer* to purchase is subject to Purchaser's approval" (emphasis in opinion).   The Seventh Circuit held that the clause was a condition precedent to contract formation, not a condition precedent to performance of the contract.  *Id.* at 382.  Similarly, in *Lexington Insurance*, the agreement provided that payment and acceptance would "signify the agreement" to arbitrate.  840 F.3d at 416.  Accordingly, the Seventh Circuit held that payment and acceptance was "the means by which the parties form an agreement to arbitrate" and "not merely a procedural mechanism attendant to an already-enforceable arbitration agreement."  *Id.* at 417.  In *BG Group*, by contrast, the Supreme Court reasoned that the litigation requirement was "a procedural condition

precedent to arbitration" because "the Treaty nowhere says that the provision is to operate as a substantive condition on the formation of the arbitration contract, or that it is a matter of such elevated importance that it is to be decided by courts." 572 U.S. at 40.

The magistrate judge's order equivocates between interpreting the ACE ADR provision's requirements as conditions precedent to the right to arbitrate and conditions precedent to the formation of an arbitration agreement. (*Compare* ECF No. 48 at 13 ("the incorporation of the JAMS rules is applicable only if Anthem had the right under the contract to invoke the arbitration clause") *with id.* ("parties may not delegate to the arbitrator the fundamental question of whether they formed an agreement to arbitrate in the first place").)  But like the treaty in *BG Group*, and unlike the clauses in *Allen* and *Lexington Insurance*, the ACE ADR provision contains no language to suggest that its procedures govern the formation of an agreement to arbitrate, rather than whether or when the right or duty to arbitrate arises under that agreement.  Anthem and Atlantic agreed to resolve "any disputes or differences [that] arise under or in connection with [the policy] or the breach, termination or invalidity thereof" in accordance with the ACE ADR provision, which requires arbitration under certain conditions.  Accordingly, whether the Bermuda mediation discharged Atlantic's obligation to arbitrate under the ACE ADR provision is not a question of the existence of an agreement to arbitrate reserved for the judiciary; it may be delegated to the arbitrator (and may be presumptively for the arbitrator, though the Court need not reach the issue here).  *See Gove v. Career Sys. Dev. Corp.*,

14

689 F.3d 1, 5 (1st Cir. 2012) ("However, the non-occurrence of a condition precedent does not render an agreement invalid.  It simply means that the duty to perform does not arise."); *Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 390 (7th Cir. 1984) ("The claimed failure of a condition precedent only affects the ability of the liquidator to enforce the provisions of the contact against appellant, as with fraud in the inducement.  A defense to enforceability of contractual provisions, as opposed to the denial of any contractual relationship, does not deprive the arbitration clause of its effectiveness.") (citation omitted).

Courts enforce the parties' agreement to delegate arbitrability questions to the arbitrator, "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein,* 139 S. Ct. at 530.  Anthem contends that the ACE ADR provision's incorporation of JAMS Rules constitutes "clear and unmistakable" evidence of delegation.  (ECF No. 51 at 17.)  Atlantic responds that the JAMS Rules are only relevant if Anthem elected arbitration instead of mediation, and that the Bermuda arbitration constitutes Anthem's irrevocable election of mediation.  (ECF No. 60 at 20–21.)

The magistrate judge's order sided with Atlantic, reasoning that "the incorporation of the JAMS rules is applicable only if Anthem had the right under the contract to invoke the arbitration clause in the first place." (ECF No. 48 at 13.)  By that reasoning, the delegation is meaningless:  arbitrability is for the arbitrator to decide only if the court first decides arbitrability in Anthem's favor.  But Indiana law requires that contracts "be read as a whole," and that courts "construe the language

in a contract so as not to render any words phrases, or terms ineffective or meaningless[.]" *State Farm Fire & Cas. Co. v. Riddell Nat'l Bank*, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013). The relevant question for determining who decides arbitrability is not whether Anthem has the right to arbitrate, but whether there is an arbitration agreement between the parties with clear and unmistakable evidence of the parties' intent for the arbitrator to decide arbitrability. Otherwise, the analysis is necessarily circular.

As explained above, there is an agreement to arbitrate between Anthem and Atlantic, as the dispute over the Bermuda mediation implicates only Anthem's right to arbitrate, not the existence of an agreement to arbitrate. And as explained below, that agreement to arbitrate contains clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator.

The Seventh Circuit has long recognized that an agreement to have any arbitration governed by a set of rules incorporates those rules into the agreement. *See Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976) ("The agreement of the parties to have any arbitration governed by the rules of the AAA incorporated those rules into the agreement"). The ACE ADR provision requires that arbitration proceed under JAMS Rules, and JAMS Rule 11(b) provides that "[j]urisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator." JAMS Comprehensive Arbitration Rules & Procedures (eff. July 1, 2014), https://www.jamsadr.com/rules-comprehensive-arbitration/.

Appellate courts nationwide have held that incorporating JAMS Rules in a commercial agreement between sophisticated parties constitutes clear and unmistakable evidence of agreement to delegate questions of arbitrability to the arbitrator. *See, e.g.*, *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017) ("We agree with our sister circuits and therefore hold that, in the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability."), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("In our view, Dr. Belnap and SLRMC clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement."); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 536 (5th Cir. 2016) (holding that adoption of JAMS Rules was "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (adoption of JAMS Rules "clearly and unmistakably delegated questions of arbitrability to the arbitrator"); *Wynn Resorts, Ltd. v. Atl.–Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability.").

The overwhelming weight of authority thus compels the conclusion that the ACE ADR provision clearly and unmistakably delegates questions of arbitrability to the

arbitrator.  "[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).  But where, as here, a valid agreement to arbitrate exists, and the agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Henry Schein,* 139 S. Ct. at 530.  "In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Id.* at 529.  Accordingly, with respect to Atlantic, the magistrate judge's order denying Anthem's motion to compel arbitration and stay this case was contrary to law and must be set aside.

### B. OneBeacon

The magistrate judge's order found the OneBeacon policy to be ambiguous because it follows four different ADR provisions that "are impossible to reconcile with one another," (ECF No. 48 at 17), and that the parties must be given the opportunity to present extrinsic evidence to resolve the ambiguity, (*id.* at 20).  Anthem objects, arguing that the magistrate judge's order clearly erred because Indiana law requires that any ambiguity be resolved in favor of the policyholder.  Plaintiffs respond that the magistrate judge's order correctly determined that the ambiguity should not be resolved in favor of the policyholder.

18

In the discussion below, the Court does not determine whether the ambiguity should be resolved in favor of the policyholder. Rather, after setting aside certain clearly erroneous findings of the magistrate judge's order, the Court is satisfied that the parties have agreed on the essential terms of an agreement to arbitrate, so that arbitration should be compelled, and any remaining ambiguities are immaterial. *See Tinder*, 305 F.3d at 735 ("A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate."). While Anthem made this argument in the underlying briefing, (ECF No. 47 at 5 ("OneBeacon agreed to follow underlying policies that are all subject to ADR")), and the magistrate judge's order addressed and rejected the argument, (ECF No. 48 at 17), Anthem did not object to the magistrate judge's order on this ground. "[A]lthough the district judge *must* make an independent determination of a magistrate judge's order upon objection, he is not *precluded* from reviewing a magistrate judge's order to which a party did not object." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009) (emphasis in original); *see also Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000) ("even without considering the objections, the district judge should have reviewed the magistrate judge's order for clear error").

The finding that the OneBeacon policy followed four different arbitration provisions is clearly erroneous, as it relies on the mistaken premise that the Chartis policy and the Endurance policy contain arbitration provisions different from any other ADR provision in the Underlying Insurance. Although the Chartis policy does contain the language cited in the magistrate judge's order, (*see* ECF No. 42-3 at 140–

41), Endorsement No. 3 to the Chartis policy replaces that language with the JAMS International provision, (*see* ECF No. 42-3 at 144–45).   Likewise, though the Endurance policy contains the language cited in the magistrate judge's order, (*see* ECF No. 42-3 at 158–60), Endorsement No. 11 to the Endurance policy replaces that language with the JAMS International provision, (*see* ECF No. 42-3 at 180–81). Moreover, the magistrate judge's order erroneously found that the Iron-Starr policy incorporates the ACE ADR provision.   (ECF No. 48 at 15).   The Iron-Starr policy's Endorsement No. 4 deletes the relevant provision and replaces it with the JAMS International provision.   (ECF No. 42-3 at 190–91.)

These corrected findings reveal a substantially smaller, and more orderly, universe of ADR provisions in the Underlying Insurance than the "quagmire" described in the magistrate judge's order, (*see* ECF No. 48 at 17).   All ten followed policies contain or incorporate either the ACE ADR provision or the JAMS International provision.   The five policies issued by Bermuda insurers (the Chartis policy, the Endurance policy, the XL policy, the Iron-Starr policy, and the Argo Re policy) contain the JAMS International provision.   The remaining policies contain or incorporate the ACE ADR provision.

Though no longer a quagmire, the OneBeacon policy remains ambiguous to the extent the ACE ADR provision and the JAMS International provision conflict. "Insurance policies with directly conflicting terms are ambiguous." *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016).   And the provisions do conflict on some points.   The ACE ADR provision contains conditions to the right to

arbitrate (discussed above) that the JAMS International provision does not.  The ACE ADR provision requires ("[u]nless the parties otherwise agree") that arbitration take place in Indianapolis, Chicago, or New York, while the JAMS International provision requires that arbitration take place in London, Toronto, or Bermuda.  The ACE ADR provision requires that any arbitration proceed under JAMS Rules, and the JAMS International provision requires arbitration under JAMS International Arbitration Rules.  And the allocation of costs differs between the provisions.

Two recent decisions have addressed whether an enforceable arbitration agreement exists where there are conflicting arbitration provisions.  In *Ragab v. Howard,* 841 F.3d 1134 (10th Cir. 2016), the Tenth Circuit, applying Colorado law (but relying chiefly on a New Jersey case), held that arbitration could not be compelled where there were six irreconcilable arbitration provisions—conflicting on which rules will govern, how the arbitrator will be selected, the notice required to arbitrate, and attorney's fees—reasoning that the parties had not agreed upon all essential terms.  Then-Judge Gorsuch dissented, reasoning that "treating the procedural details surrounding arbitration in this case as *non*essential terms would do a good deal more to effectuate the intent of the parties before us, itself always the goal of contract interpretation."  *Id.* at 1139 (quotation marks and brackets omitted). The dissent further argued that, unlike the New Jersey case relied upon by the majority, the parties before the court were "parties to a commercial, not a consumer, transaction, with contracts actively negotiated by both sides, not contracts of adhesion thrust upon the plaintiff."  *Id.* at 1140.

In *Matter of Willis*, 944 F.3d 577 (5th Cir. 2019), by contrast, the Fifth Circuit, applying Mississippi law, held that the parties entered into a valid contract to arbitrate—that is, agreed on all essential terms—despite inconsistencies in the contractual terms pertaining to "such innocuities as the number of arbitrators, location, and fee shifting." *Id.* at 582. Because both the competing arbitration agreements contained a delegation clause, the majority concluded that it was for the arbitrator to decide whether the claims were arbitrable and to resolve the inconsistent procedural terms. *Id.* at 583. Judge Dennis dissented, noting that, unlike *Ragab*, the contracts at issue were an "ordinary consumer loan and insurance contracts . . . presented to Willis, a mechanic and truck driver, without his having had the benefit of counsel or bilateral negotiation[.]" *Id.* at 583.

Despite the opposing outcomes, *Ragab* and *Willis* do not present a true circuit split: the Fifth Circuit applied Mississippi law, and the Tenth Circuit applied Colorado law. Here, of course, the Court must apply Indiana law to determine whether there is an agreement on the essential terms. Under Indiana law, "[i]t is well settled that 'only essential terms need be included in order to render a contract enforceable.'" *German Am. Fin. Advisors & Tr. Co. v. Reed*, 969 N.E.2d 621, 626 (Ind. Ct. App. 2012) (quoting *Wolvos v. Meyer*, 668 N.E.2d 671, 676 (Ind. 1996)). "All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom." *Wolvos*, 668 N.E.2d at 676.

It appears that *Reed* is the only Indiana case to decide the essential terms of an arbitration agreement. In *Reed*, the appellant submitted to the trial court three

22

different versions of a purported arbitration agreement.  The Court of Appeals held that the appellant had established the existence of an enforceable arbitration agreement, even though the various versions required different entities to conduct the arbitration, because "each of those versions contains the same essential terms regarding arbitration, namely, an agreement to arbitrate 'any dispute between me and you arising out of this agreement.'"  *Id.* at 627.  Indiana law on the essential terms of an arbitration agreement therefore appears similar to the Fifth Circuit's interpretation of Mississippi law in *Willis*.  (And the concerns animating Judge Dennis's dissent in *Willis* are not present here, in a case involving sophisticated parties and a commercial transaction.)

Every policy in the Underlying Insurance contains or incorporates an arbitration clause—the ACE ADR provision or the JAMS International provision.[1]  Under both provisions, arbitration is binding.  The provisions' scopes are similarly broad.  The ACE ADR provision extends to "any disputes or differences [that] arise under or in connection with this Policy or the breach, termination or invalidity thereof, whether arising before or after termination of this Policy."  (ECF No. 1 at 19.)  The JAMS International provision extends to "[a]ny dispute arising under or relating to this Policy[.]"  (ECF No. 42-3 at 180.)

Both provisions contain clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  The ACE ADR provision incorporates the JAMS Rules.

---

[1] The ACE ADR provision, as noted above, also contains conditions to the right to arbitrate.  But as discussed with respect to Atlantic, whether those conditions are met is a matter for the arbitrator.

JAMS Rule 11(b) provides that "[j]urisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator." JAMS Comprehensive Arbitration Rules & Procedures (eff. July 1, 2014), https://www.jamsadr.com/rules-comprehensive-arbitration/. As discussed above, the overwhelming weight of authority holds that incorporation of JAMS Rules constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability.

The JAMS International provision incorporates the JAMS International Arbitration Rules in effect on August 1, 2011. Article 17.2 of those rules provides that the Tribunal may rule on objections "to the jurisdiction of the Tribunal or to the arbitrability of a claim." JAMS International Arbitration Rules, art. 17.2 (eff. Aug. 1, 2011). Courts nationwide have held that incorporation of similar rules constitutes clear and unmistakable evidence of agreement to arbitrate arbitrability. UNCITRAL rules, for example, provide, "The arbitral tribunal shall have the power to rule on its own jurisdiction[.]" UNCITRAL Arbitration Rules, art. 23. "When parties incorporate UNCITRAL rules, they clearly and unmistakably intend to refer questions of arbitrability to the arbitrators in the first instance." *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73–74 (2d Cir. 2012); *see also Earth Sci. Tech, Inc. v. Impact UA, Inc.*, --- F. App'x ----, 2020 WL 1861402, at *5 (11th Cir. Apr. 14, 2020); *Chevron v. Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015); *Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1074 (9th Cir. 2013). Similarly, the American Arbitration Association's (AAA) arbitration rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction[.]" AAA Commercial Arbitration Rule

7(a).  "Virtually every circuit to have considered the issue has determined that incorporation of [AAA arbitration rules] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle*, 724 F.3d at 1074 (collecting cases).

Thus, the JAMS International provision, like the ACE ADR provision, contains clear and unmistakable evidence that the parties agreed to delegate arbitrability to the arbitrator.  Moreover, the two provisions do not materially conflict on the number or selection of arbitrators:  three arbitrators, with each party selecting one, and the parties' chosen arbitrators then selecting the third.

Despite the inconsistencies between the ACE ADR provision and the JAMS International provision, the OneBeacon policy, read as a whole with the followed policies, "makes one thing clear:  These parties selected private dispute resolution. Courts should not use uncertainty in just how that would be accomplished to defeat the evident choice." *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 793 (7th Cir. 2013).  The parties here agreed on the essential terms: to arbitrate any dispute between OneBeacon and Anthem arising from the policy, including disputes about arbitrability. *See Reed*, 969 N.E.2d at 627 ("each of those versions contains the same essential terms regarding arbitration, namely, an agreement to arbitrate 'any dispute between me and you arising out of this agreement'"); *Green*, 724 F.3d at 791 ("We are skeptical of decisions that allow a court to declare a particular aspect of an arbitration clause 'integral' and on that account scuttle arbitration itself."); *Willis*, 944 F.3d at 582 ("Though the agreements differ over procedural details, they speak with one voice

25

about *whether to arbitrate*."). "A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735.  Because both provisions delegate arbitrability to the arbitrator, it is for the arbitrator, not the court, to resolve the inconsistent terms.  *See Willis*, 944 F.3d at 583 (citing *BG Grp.*, 572 U.S. at 34; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

The magistrate judge's order erred in holding that the ambiguity of non-essential terms had to be resolved before determining whether to compel arbitration between Anthem and OneBeacon.  That order is therefore set aside.

## Conclusion

For the reasons set forth above, the Court **sets aside** the magistrate judge's order (ECF No. 48), **grants** Anthem's motion (ECF No. 42), and **denies** Plaintiffs' motion (ECF No. 24).  The parties shall proceed to arbitration, this matter is stayed, and all deadlines are vacated.

The parties are ordered to inform the Court within thirty days of any decision reached in arbitration and/or to provide a status report regarding the arbitration to the Court every ninety days.  If, for any reason, there is a lapse in the naming of an arbitrator or arbitrators, then either party may apply to the Court for appointment of an arbitrator or arbitrators.  *See* 9 U.S.C. § 5.

**SO ORDERED.**

Date: 5/18/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

26

Distribution:

Justine M. Casey
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
jcasey@sheppardmullin.com

R. Randall Crispen
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
rcrispen@sheppardmullin.com

David V. Goodsir
REED SMITH LLP
dgoodsir@reedsmith.com

Mark S. Hersh
REED SMITH LLP
mhersh@reedsmith.com

Kandi Kilkelly Hidde
FROST BROWN TODD LLC (Indianapolis)
khidde@fbtlaw.com

Dan J. Hofmeister, Jr.
REED SMITH LLP
dhofmeister@reedsmith.com

Elizabeth V. Kniffen
ZELLE LLP
ekniffen@zelle.com

Daniel James Millea
ZELLE HOFMANN VOELBEL MASON & GETTE LLP
dmillea@zelle.com

Meghan Eileen Ruesch
LEWIS WAGNER LLP
mruesch@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Caitlin O. Young
REED SMITH LLP
coyoung@reedsmith.com